Okay, our next case is Lezark v. IC System Inc. 25-2614. We'll hear first from Mr. Abramowitz. Thank you, Your Honor. May I reserve three minutes for a vote, please? Sure. Thank you. May it please the Court, my name is Kevin Abramowitz. I'm here for the appellant, Jeffrey Lezark, and if the Court does not have any questions at the start, I would like to focus on the alternative class and why we believe that class should have been certified.  So, the way we, I think this background is important to understand our position. The way we view this class being litigated, if this goes to a trial, is it would be in three phases. So, first, there would be a liability phase, second, there would be a damages phase, then third, there would be a distribution phase. So, the first liability phase, that is a common question. What that looks at is the letter at issue in this litigation, the facts that surround that letter, and then what is decided is whether that letter violates 1692E or F of the FDCPA. We can use common evidence to either reach a yes or no answer to that question. If the answer to that question is no, then the case ends for everyone. If the answer is yes, then we go to stage two of the trial. Can I just, I don't mean to interrupt your kind of arc of the case, but it strikes me that one of the big issues in this case is standing, and who has standing and who doesn't have standing. And so, at some point in time in the arc of this case, there's going to have to be standing decisions in terms of which individual plaintiffs have standing. Now, I understand that there was this five-question questionnaire that was sent out and that you've limited to the people who have submitted responses to that five-question questionnaire, but those responses weren't certified, they weren't sworn under perjury, they aren't affidavits. And so, if IC Systems says, you know what, we don't believe it. We actually don't believe that you felt stress. We actually don't believe that you contacted an attorney. We want to take all 746 of you, and we want to ask, and we want to know the fine details of each one of your responses to each one of this. When you say you had anxiety, what was that anxiety? How great was that? We want to know, was that the emotional injury needed to confer Article III standing under statute? At some point in time, that has to be built into the arc of the case if that's put in play, right? I agree, and I think that's at the third stage of the trial. At the very end, at distribution? Correct, yeah. It would be the distribution, the third stage of the trial. But, you know, standing is so fundamentally jurisdictional, though, that, you know, it goes to the power of federal courts. We normally kind of front load that. It gets special treatment. It's a 12B1 motion where we can look at facts beyond the pleadings at times to do it. Why are you parking? I get why you want to park it at stage three. At one level, it seems the most just who's in, who's out, who gets money, who doesn't sort of moment. But when we're looking at predominance, we have to account for that is part of the predominance analysis, right? Yes, I do. I do agree we have to account for part of the predominance analysis. But so the 12B1 analysis, that obviously analyzes whether the complaint alleges standing to give the court jurisdiction at that time to hear the case before it's certified. So then at class certification, I think the question is, has the class representative proved standing to give the court jurisdiction to then decide the case as a class action and the issues of its members? And then once you get jurisdiction, say the name plaintiff makes that showing at the class certification stage, the court has jurisdiction then to decide the case as a class action, which then gives us jurisdiction to decide liability of the class members to decide their damages. And then at the end of the stride, whether it has the power to distribute those damages to the class members. But I guess here's another way of viewing it. If we wanted to look at hours, billable hours in terms of how much time would be spent doing each one of these things. Liability, very common, but I think we're either going to say this is a 1692 E and F violation or it's not. Either it's misleading or it's not. So that'll be a little bit of time. Damages, pretty easy in these cases. A lot of people are going to get the statutory min damages. So maybe some people can prove more, but that's not going to be really hard. So I don't think you know more about these cases than I do. But then we get to standing and we're going to have to look at each individual person if it's challenged. Now, maybe it's stipulated away, but it hasn't been so far. And say, you know what? We don't think that you're upset. That's going to be a lot of hours. Depositions of all 746 people to find out which attorney they called, when they called, how they called after they got the letter. Those might be relatively short depots. They might be 30 minute depots, 45 minute depots, but multiplied by 746, that's a lot of time. And so if we view this from a billable hour metric, then how can common questions predominate? Yeah. So, and I think this is, to give you an answer, I think first we have to look at the purpose of Rule 23, B3 specifically. So what the purpose of that statute or that rule is, is that we're trying to achieve economies of time, effort and expense, promote uniformity of decision, but also we don't want to sacrifice procedural fairness. We don't want to sacrifice due process. So if we had just 747 individual lawsuits, we're going to have to, we're going to have to do the liability determination, the damage determination and the standing determination. So here, what this case does is we're going to have uniformity of decision on liability. We're going to have uniformity of decision on the damages. And then we may have to address standing at the end, depending on what IC systems does with the claim forms. If it says there's only a few that I want to challenge. I totally understand that, but you dispute my kind of rough projection of kind of where the hours would be in this case. Do you dispute that the liability billable hours and the damages billable hours are going to be a lot less than the billable hours if standing is disputed? No, I do not dispute that. If they challenged everything, I do not dispute that. And I think the, you know, and this was in our briefing, a lot of times when there are individual damage issues, which standing is, there's a question as whether it's a damage issue and injury issue, you know, we can argue about that. But I think what courts often do is instead of just denying certification outright and having 700,000 individual lawsuits, what they do is they say makes more sense to determine liability for everyone to determine damages for everyone all at once. And then at the backend, we will, you know, we'll see if there's some kind of mechanism that we can create that will make it efficient. Maybe the defendant says, we only think some of these claim forms are invalid or wrong. But at that point, then we're going to address the case. And that's why we think that, that, that issue, that's why we think the common issues predominate because they can really decide the bulk of everyone's case all at once in this, in this single litigation, rather than having 700 individual litigations. It doesn't that I turn on a little, what my colleagues asking you, which is how threatened or how sure we are about standing, like if most people did not have standing, or there was some like clear question or lack of injury that showed most of those 700, some didn't have standing, then that takes away some of this other like time saved, right? It also is going to impact the liability and the damages, is it not? I'm not sure how that's supposed to be determined upfront, if somehow state the standing analysis might threaten like 60% of the people that you want to join in the class. Yeah. So the liability, I don't think it will threaten because, or even damp. So I think here, what we can do is I don't think it will threaten my, the liability determination. I don't think it'll threaten the damage determination. So the liability determination, once the class representative has standing, the district court has jurisdiction to decide the liability of every class member. So I don't think they're failing. I think the standing issue is really, can the court order damages after it's determined liability? And the damage issue here, because 1692K gives you these facts, I think it's five or six factors you have to look at. Really what we'll decide is if there's a positive liability determination, then say the damage judgment's $50,000. That's a pro rata share for each person. So they're going to get their liability determined. And then what is the what's going to be determined is, can this court order that relief to this individual? So I don't think that the standing question will affect those first two questions, even if it's decided against some people in an adverse manner that they don't have standing. The district court does not have the ability to order relief to them. And if standing's a threshold jurisdictional issue, it doesn't strike you as strange that all of those determinations would be made with these assumed to be part of the class, where ultimately there's no standing to give them relief? I don't think it is. I just think that's how the jurisdictional timeline is in class actions, because we first do the 12B1 analysis. Does the complaint establish standing for this class representative? And then at the rule 23 stage, we say, does this class representative, has he proven his standing to have jurisdiction for the court to decide these issues for all these people? And because standing is separate from the merits, it may at first seem odd, but I don't think it is odd that someone could have a claim, they could have damages for that claim, but the federal court just does not have the power to issue that award to them at the end of the case. And I think that's really what Huber, the case that is central to our case, was trying to decide. It's really just trying to decide, is your class cohesive enough to merit litigation by representation? And what it was asking was, are the injuries that your class suffered similar to the injuries that the class member or class representative suffered? And I think that we've established that here, at least for the alternative class at the class certification stage. But my colleague, I think, is pointing out that there could be some very fact-specific inquiries about the standing question, which could vary greatly person to person, which would seem to threaten, I think, back to his original point or question, the whole idea of the commonality that would justify the class action character of the suit in the first place. So I agree that once we, if we get to that third stage, so say liabilities, yes, damages, yes, we get to that third distribution stage, and I see systems decides to challenge some forms, all the forms, there would be individualized evidence that would come in, and that's where the bulk of our time would be spent. But I still don't think that destroys predominance, because 99% of the case can be determined with common evidence. And at that back end, there's a, it's really more of a manageability problem than a predominance problem. At that back end, there's a number of things that the district court can use to manage any issues with taking that evidence, with deciding that individual standing question. So I think it makes more sense to resolve 99% of these 700 lawsuits at once and require 700 lawsuits and 700 liability determinations, damage determinations, and the standing determinations. You know, does it bother you at all that the predominance inquiry, at least as I read Rule 23b-3, says that questions of law or fact common to class members predominate over any questions affecting only individual members? As I begin to make a balance sheet, I think you're right. All the questions of law, most of the questions of law are going to be, you know, whether the letter violated the FDCPA. I think there is a very common question of fact, too, that everyone has. They all received the letter, so they're already kind of in this. So you've got a lot going for you, but they have to predominate over the individual ones, and then we've got this huge, huge chunk kind of post-transunion of trying to find out who has standing and who doesn't. And so you've got some things going for you, but we have to look at not just questions of law, but also questions of fact, and you've got some of those going for you. I don't know. Is it how many elements that you can satisfy of a claim to get it to be predominant, or is it how much of the billable hour method you have to do? If it's how many elements you have to satisfy, maybe it predominates on the element level. You've got everything but standing, arguably, possibly. If it's billable hours, then it doesn't predominate. You're going to spend all your time on individual determinations. I guess you're going to tell me that you think Rule 23b3 should be read from an elemental standpoint as opposed to a workload standpoint. Well, I agree with you. I mean, what Rule 23, I think this court has said that there's two things we need to look at. We need to look at if the common issues are more prevalent, but also if they're more important. So I agree with you. You don't just count the common versus individual, and then you automatically win, depending on which one there's more of. But I still think that if you look at how this case would be dealt with if there were 700 cases versus one, I think certifying this class clearly satisfies and is called for by the policy that underlies Rule 23, which, again, is that we want to achieve economies of time, effort, and expense, promote uniformity of decision, but also we want to make sure procedural fairness is not sacrificed. I think we get that here because with 700 individual lawsuits, there's going to have to be 700 liability determinations, 700 damage determinations. Here, there's one for each of those. Even if at the back end, there could be a number of individual standing hearings, or maybe there's a different affidavit process, maybe there's a special master. I'm not sure because we're not there yet, but even the class could get decertified at that point. But still, I think it makes more sense to certify it now and at least determine liability and damages, and then we can Vanderwood. Good morning, Your Honors. May it please the Court, Carol Vanderwood for the appellee in this case, IC Systems, Inc., or ICS. I just wanted to focus our responsive argument on the proposed alternative class as well. I don't think there's any reasonable basis to disrupt either of the holdings of the district court here, that the class can't be certified under the initial putative class or the proposed alternative class, as with respect to the original putative class comprised of approximately 15,000, I think, individuals who received the Rule 540 letter. The extension of, or the recognition of a class under Havens, I think, has no support in either this court's jurisprudence, or even the Supreme Court jurisprudence cited in support of that. But we'll move beyond that because that was not the focus of the argument. And the issue here to try and get to the issue of predominance and avoid that inquiry at the certification state, the argument has been made that we basically punt the issue of damages, or the issue of standing slash damages, to the end of a trial, and that it doesn't really have any relevance here that we should front load with more of the common question, I think, as Judge Phipps said, going to the issue of law or liability, and that we can avoid having to look at the individualized inquiries regarding standing and damages until a later point in the case. But that's absolutely contrary to this court's holding in Huber, where this court recognized that you have to assess that issue, both standing and damages, in the context of certification. And that's exactly what the district court did here. Well, let's just break that down. I mean, I think it's clear that standing for any named plaintiffs needs to be addressed at the outset of the case. Correct. But we have never held, nor has the Supreme Court held, that standing for class members must be determined at the outset of the case. And what we said in Huber was that standing for unnamed class members could pose a predominance question, but it was not a justiciability question. Correct. And we're not disputing that. But it is a predominance question, and it is pertinent to the certification inquiry and not an issue that should be punted until some damages phase of the trial. And the district court here appropriately followed the careful guidance of this court in Huber. So can I just, you know, it seems to me that you want to front load, you know, the standing determination, and your colleague on the other side wants to put that at the very end. But does it, I guess, for predominance purposes, does it really matter when it shows up? If we're going to spend a lot of time making individual determinations on day one, and that would eclipse any of the common determinations, or if we're going to spend all our time making individual determinations on day 210, does it really matter when it is, predominance doesn't seem to have a time dependency. It seems to look at the entire arc of the case and say, are you going to spend more time doing individual determinations or common determinations? Or do you think that timing really does matter for predominance? I guess. Okay, so two points in response to that. I think timing does matter because Huber laid out the timing, Huber laid out the timing by pointing out that it should be assessed at the certification stage. And it should be assessed under the guidance of this circuit in assessing the predominance inquiry to include standing and damages. So timing is significant based on this court's precedent. And we also have the issue of it does matter, because the district court here assessed whether or not it would take significant time to determine the individualized damages and the nature of the damages at issue, including the emotional distress, which is a highly fact sensitive inquiry as to each individual plaintiff. And that's, I think there were 600, over 650 plaintiffs that check the first box on the questionnaire, a generic question as to sort of emotional distress. And as the district court pointed out, that's going to be highly fact sensitive, you're going to, as Judge Phipps noted, depositions, medical records, a lot of evidence is going to have to be gathered with respect to that particular inquiry. And the court following the district court following the guidance of this circuit and Huber looked at that issue, assessed the questions on the questionnaire, looked at whether or not that would require an individualized inquiry and held absolutely that it did. It did not abuse its discretion. It applied this court's precedent appropriately and properly. And so is the implication of the district court's with regard to the alternative class that if you have an injury that is intangible, none less concrete, like an emotional injury, you simply can't have a class action because emotional injuries will always be really individualized. And wouldn't that be a problem? I don't think it's that you can read the district court's opinion in this case that broadly as foreclosing any emotional injury claim. Here we have a questionnaire which doesn't specify what of emotional injury and by the very nature, emotional injury claims are fact sensitive. So we have to look at it in the context of this case, what the questionnaire provided and whether or not in the context of a predominance inquiry, the court was satisfied that common issues will predominate over individualized issues. And here the court, again, following this court's jurisprudence considered it would not. And there's nothing in this court's jurisprudence, the Supreme Court jurisprudence, anywhere else that would suggest that the district court abused its discretion. And it is the district court's discretion in determining that issue on this particular record. So the problem here is the lack of specificity in the letter that went out to members of the alternative class. Well, as a district court pointed out, it was the fact that it's going to need significantly more information to assess whether a concrete injury actually occurred than can be gleaned from the questions on the questionnaire. So that, I mean, that's where the district court came down. It's like it could not determine that issue at this stage and would need to, you know, as the court indicated, take possible depositions, review medical records, look at a challenge to both standing and damages and the amount of time, work and individual issues that would go into assessing that. It seems that the district court made a ruling that each member of the alternative class made a prima facie showing of standing by checking the box, right? And most of the boxes were checking about emotional injury. So we have that already. And so then the next question is whether the specifics of the injury will be able to be quantified in a manner that isn't too individualized, right? Right. Whether there's 650 plus individuals have common injuries that could be defined, you know, as emotional or not. And but the threshold question, even before you get to the nature of the so-called emotional injury, is whether or not they even have an emotional injury that's concrete. And that's where you're to take that evidence and build a record to determine whether or not those individual plaintiffs can satisfy the concrete injury requirement to satisfy standing and to be eligible for damages. So despite the holding that they've made a prima facie showing of standing, which means that it is a concrete injury, are you saying that more was needed just to get to that? No, not that there's a concrete injury. This is a conflation. The proposed the initial putative class, I think, goes to the issue of liability. It's analogous to the class at issue in Huber, where the argument was made and made again on appeal that basically so long as there's a violation of the FDCPA, so long as a letter violates the FDCPA, then you have standing. That's absolutely not true. And that's where we get into the predominance inquiry. And this court in Huber, the Supreme Court in TransUnion held, you do not get standing just because there's a violation of the FDCPA. You have to look at standing and the damages inquiry, and that goes to the nature of the injury and whether it's concrete. And here, that's where we look at the individualized inquiry that the court focused on and the sort of the lack of a method identified by plaintiff to make this, I think, feasible in the context of a class, if it actually is certified. So you not only do you have the issues with the evidentiary record that will need to be built as the 600 plus, well, 747, I think, individual plaintiffs, you also have the issue of how do you address it on the back end if 60, 70, 80 percent of these individuals, it turns out, don't actually satisfy standing or damages and all the time, energy, resources that went into getting to that point. Okay. Each of these plaintiffs in this alternative class checked the box saying they felt anxious, overwhelmed, or stressed because of the lack. And the district court ruled, and you have in this appeal challenged, that makes a prima facie case of standing in that intangible emotional injuries are nonetheless concrete following Supreme Court precedent saying that, right? So you're with me so far. Well, I would disagree that just violating the FDCPA. I'm not talking about violating the FDCPA. I'm talking about feeling anxious, overwhelmed, or stressed. That's what the letter said. That's what they certified. And these are sworn statements, self-sworn declarations saying I felt anxious, overwhelmed, and stressed. And the district court did its whole opinion in July of 2023 saying, I take that to be a concrete injury under Supreme Court jurisprudence, right? It acknowledged that it could be a concrete injury. Yes. Okay. And so as a prima facie matter, it said each member of the alternative class has made a showing of a concrete injury. They have articulated what could be a concrete injury. I would agree. That is what the district court said. But then the district court went to the next step and was, does that satisfy the predominance requirement in the context of Rule 23b-3? And then applying the guidance of Huber determined that it did not. And there's nothing in the district court's rationale that is at odds with this circuit's precedent on that particular issue. And again, we're looking at whether it abused its discretion. And the district court carefully analyzed Huber, carefully applied that rationale to this particular record, and I think appropriately rendered its decision in denying class certification in this case with this circuit's guidance. So it sounds like you're saying that the self-determined declarations that members of the alternative class returned would have needed to provide some specificity about how much therapy they had or how much work they missed or so on and so forth because of their emotional injury. And then there might've been more of a record upon which the district court could say that common issues predominate. Yeah, so I'll read what the district court actually said in that regard, which is, for example, determining at trial whether a particular member of the proposed alternative class suffered emotional distress because they read the 540 letter would necessarily entail the development of a considerably more robust factual record than the one-sentence response provided in claim form questionnaire and could ostensibly involve deposition testimony, direct and cross examination, and the production of documents and medical records. So that is part of the rationale of the district court, that the questionnaire answer itself does not satisfy the predominance inquiry that the district court was required to undertake under Huber and points out that it needs to have a much more developed, much more robust factual record, and that's going to be highly fact-sensitive and individualized as to each proposed alternative class member. All right. Thank you very much. All right. Thank you, Harris. Thank you, Your Honor. Three quick points. So the first point, I wanted to go back to Judge Phipps's question about the more time going towards individual determinations, more time going towards common determinations. So I had two things I wanted to say about that. So Sleepy's, which is a case that went up to this third circuit multiple times, was a wage and hour case. And Tyson Foods, that's a 2016 Supreme Court case, that's a wage and hour case too. So I think those cases show why I don't, if we're looking at that question in a vacuum, I'm not sure it accurately describes how the prominence inquiry works because in those cases, once liability was established, there was a lot of time that had to be spent parsing out who actually was not paid overtime, who was paid overtime, and then how to assess those damages. So I think both of those cases support us. And also, I think as a second point, if you look at the time it would take to decide 700 individual cases, it would be a lot more time and a lot more effort than it would to decide liability damages in this case and then do 700 inquiries. So I think this case shows that the common questions do predominate because this case versus 700 lawsuits, there will be an appreciable efficiency of time gained by this case. So it's interesting to me because I view 23B3 as having two components, predominance and superiority. And they blur a little bit because then we get A through D under it, I think, that say these are the factors that we'll use to decide these. A little strange to say that they're completely separate, but you might be right that you win on superiority. You say, hey, look, this is just a better way to go. But you have to win on both. And so that's why you can say, yeah, this is the better way to go. It's just easier, it's tidier, it's better than 700 cases. But you don't just get to win that. Rule 23B3, it came in in 1966, everybody said, this is really, really bold. This is really something new to let this happen. And so they had the two requirements, not just superiority. And so predominance, I'm still kind of stuck with this notion of if challenged, and I was wrong, these are sworn statements. But even so, that doesn't mean that you can't challenge an affidavit or a declaration later. Someone could say, we don't think you were telling the truth. And now we're going to have to put this to a fact finder to decide whether or not you were telling the truth on whether you experienced anxiety. That begins to add up, at least from a billable hour standpoint, or an hour spent resolving it, right? I think it does. So in a lot of times, in a lot of cases, when predominance is found to fail, usually it's found to fail, I think, often in the context of, say, you can make an initial liability determination, but then you have to, individual determination really revolves around, did that liability determination then resolve in the fact of damages to a plaintiff? And the reason why predominance doesn't exist in those cases is because you'd have to spend the same amount of time as you would in the class action than you would in separate individual cases deciding each of the plaintiff's claims because you have to do the same type of discovery over and over again. You have to do the same type of damage analysis over and over again. So in those types of cases where you maybe can determine liability, but not the fact of damage, predominance does not, it doesn't exist because that class action does not actually save any efficiency on the work that has to be done in the cases. Here, we have the liability determination, and then by how the statute is designed, that damage analysis, the fact of damages flows from establishing liability. Now, I know standing is a different issue, that would still be there, but I think that's why our case is different than a lot of the other predominance cases in that you can't just look at the time spent on individual questions versus time spent on common questions in a vacuum. All right, thank you very much.